# EXHIBIT A



**Computershare Governance Services, Inc.**
100 Beard Sawmill Road, Shelton, CT 06484

February 24, 2020

Specialized Loan Servicing LLC
Bryan Sullivan
Computershare Inc.
8742 Lucent Boulevard
Highlands Ranch CO 80129

# SERVICE OF PROCESS NOTICE

Item: 2020-256

The following is a courtesy summary of the enclosed document(s).  **ALL information should be verified by you.**

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard.

| | | |
|---|---|---|
| 1. | **Entity Served:** | Specialized Loan Servicing LLC |
| 2. | **Title of Action:** | Edward Muhammad vs. Deutsche Bank National Trust Company, as trustee for FFMLT 2007-FFB-SS, Mortgage, etc., et al. |
| 3. | **Document(s) Served:** | Summons<br>Order Extending Temporary Restraining Order<br>Complaint for Wrongful Foreclosure and to Enjoin Forcible Entry and Detainer Warrant |
| 4. | **Court/Agency:** | Shelby County Chancery Court for the Thirtieth Judicial District, Tennessee |
| 5. | **State Served:** | Colorado |
| 6. | **Case Number:** | CH-20-0137-3 |
| 7. | **Case Type:** | Wrongful Foreclosure |
| 8. | **Method of Service:** | Certified Mail |
| 9. | **Date Received:** | Friday 02/21/2020 |
| 10. | **Date to Client:** | Monday 02/24/2020 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 7<br>Friday 02/28/2020 | _CAUTION:_ Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Curtis D Johnson Jr<br>Memphis, TN<br>901-725-7520 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 061 |
| 16. | **Notes:** | Please note it appears the summons for a different defendant was inadvertently served with this document.<br>United Agent Group and our CO address are listed on page 2 of the complaint.<br>Please review the enclosed documents in order to calculate the response due date as there are other Due Dates listed in the document. |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At ComputerShare, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process.  To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by United Agent Group Inc.

Phone: 866 820 7754, Option 2 | www.cgsregisteredagent.com

| STATE OF TENNESSEE 30th JUDICIAL DISTRICT CHANCERY COURT | **SUMMONS\*\*** | DOCKET NUMBER CH-20-0137-3 |
|---|---|---|

| Plaintiff | Defendant |
|---|---|
| EDWARD MUHAMMAD | DEUTSCHE BANK NATIONAL TRUST COMP |

TO:   (NAME AND ADDRESS OF DEFENDANT)

DEUTSCHE BANK NATIONAL TRUST COMPANY,

AS TRUSTEE FOR FFMLT 2007-FFB-SS,

MORTGAGE PASS-THROUGH CERTIFICATES

c/o CT Corporation System

28 Liberty St., Floor 42, New York, NY 10005.

**Method of Service:**

- ☐ Shelby County Sheriff
- ☐ Private Process Server
- ☐ Out of County Sheriff\*
- ☐ Secretary of State\*
- ☐ Comm. Of Insurance\*
- ☑ Certified Mail
- ☐ Other
  - \*Attach Required Fees

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your defense to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your defense with the Clerk of the Court and send a copy to the Plaintiff/Plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default may be rendered against you for the relief sought in the complaint. Questions regarding this summons and the attached documents should be addressed to the Attorney/Plaintiff listed below.

| Attorney for Plaintiff or Plaintiff if filing Pro Se: (Name, address & telephone number) | ISSUED 30 of Jan |
|---|---|
| Curtis D. Johnson, Jr. | W. Aaron Hall, Clerk and Master |
| Johnson & Johnson, P.C. | |
| 1407 Union Ave., Ste 1002 | By: _____ Deputy Clerk & Master |
| Memphis, TN 38104 | 140 Adams, Room 308   Memphis, TN 38103 |

| TO THE SHERIFF: | Came to hand |
|---|---|
| | _____ day of _____, 20 _____ |
| | Sheriff |

**CERTIFICATION (IF APPLICABLE)**

| I, W. Aaron Hall, Clerk & Master of the Chancery Court in the State of Tennessee, Shelby County, do certify this to be a true and correct copy of the original summons issued in this case. | W. Aaron Hall, Clerk & Master By: _____ D. C. & M. |
|---|---|

\*\*Submit one original and one copy for each defendant to be served.

♿ If you need accommodations because of a **disability**, please call the ADA Coordinator at ( 901)222-2357.
For questions regarding scheduling or filing, please contact the court.

**Notice of Personal Property Exemption:**
TO THE DEFENDANT(S):
   Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state docket number on list.

## RETURN OF SERVICE OF SUMMONS

I hereby certify that I **HAVE** served the within summons:

By delivering on the_____day of_____, 20_____at_____am/pm a copy of the

summons and a copy of the Complaint to the following Defendant _____

at _____

_____     By: _____
Signature of person accepting service                          Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I hereby certify that I **HAVE NOT** served the within summons:

To the named defendant_____because _____

is (are) not to be found in this county after diligent search and inquiry for the following reason(s):_____.

This_____day of_____, 20 _____     By:_Sheriff or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the_____day of_____, 20_____, I sent, postage prepaid, by registered return receipt

mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case CH-_____to the

defendant_____. On the_____day of_____, 20_____, I

received the return receipt, which had been signed by_____on the_____ day of _____,

20_____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this_____day of<br><br>_____ , 20_____ .<br><br>Signature of_____Notary Public or_____ Deputy Court Clerk:<br><br>_____<br><br>My Commission Expires: | Signature of Plaintiff, Plaintiff's attorney or other person authorized by statute to serve process.<br><br>_____ |
| ATTACH RETURN<br><br>RECEIPT HERE<br><br>(IF APPLICABLE) | |

## IN THE CHANCERY COURT OF SHELBY COUNTY TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

EDWARD MUHAMMAD,

     Plaintiff,

vs.

                       No. CH-20-0137-3
                       JURY TRIAL DEMANDED

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR FFMLT 2007-FFB-SS,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-FFB-SS, MACKIE WOLF ZIENTZ
& MANN, P.C., as SUBSTITUTE TRUSTEE, and
SPECIALIZED LOAN SERVICING LLC as Attorney
in Fact FOR DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-FFB-SS

     Defendants.

## ORDER EXTENDING TEMPORARY RESTRAINING ORDER

THIS MATTER came before the Court on Plaintiff's request to the extend the initial restraining order which was issued in this case on January 30, 2020, for an additional fifteen (15) days. Based upon the statements of counsel and the entire record herein, the Court finds that this request should be granted. Therefore, the Court hereby orders the following:

That the Defendants, Deutsche Bank National Trust Company, as Trustee for FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS, MACKIE WOLF ZIENTZ & MANN, P.C., as SUBSTITUTE TRUSTEE, and SPECIALIZED LOAN SERVICING LLC as Attorney in Fact FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2007-FFB-SS and their employees, agents, and/or servants are hereby restrained from auctioning, selling, foreclosing or otherwise disposing of any interest that any of these defendants may have or claim to have in the real property located at 5094 WINBERRY COVE, ARLINGTON, TENNESSEE 38002, pending further order of this Court.  Bond will continue in the amount of $500.00.

The matter of the Plaintiff's application for a temporary injunction is reset for hearing on the _28_ day of _February_, 2020 at _11:00_ o'clock a.m./p.m. before Part 3 of the Shelby County Chancery Court, 140 Adams Ave., Memphis, Tennessee 38103.

IT IS SO ORDERED.

_____
CHANCELLOR

_02 - 14 - 2020_
Date
_1:10 p.m._

A TRUE COPY·ATTEST
W. Aaron Hall, Clerk & Master
By_____
D.C. & M.

**IN THE CHANCERY COURT OF SHELBY COUNTY TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**



EDWARD MUHAMMAD,

     **Plaintiff,**

**vs.**                           No.

                                **JURY TRIAL DEMANDED**

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR FFMLT 2007-FFB-SS,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-FFB-SS, MACKIE WOLF ZIENTZ & MANN, P.C.,
as SUBSTITUTE TRUSTEE, and SPECIALIZED
LOAN SERVICING LLC as Attorney in Fact
FOR DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-FFB-SS

     **Defendants.**

---

**COMPLAINT FOR WRONGFUL FORECLOSURE AND TO ENJOIN FORCIBLE
ENTRY AND DETAINER WARRANT**

---

     **COMES NOW** the plaintiff, by and through undersigned counsel, and files this

Complaint to Enjoin Forcible Entry and Detainer, and in support thereof states the following:

**I.     PARTIES**

1. The plaintiff, Edward Muhammad, is a citizen and resident of the Town of Arlington,

     Shelby County, Tennessee.  He may be served with process at 5094 Winberry Cove,

     Arlington, Tennessee 38002 (the subject property).

2. Upon information and belief Defendant DEUTSCHE BANK NATIONAL

     TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE

1

PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS ("Deutsche Bank"), is a

national trust company doing business in the State of Tennessee.  It may be served at

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT

2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-

SS, c/o CT Corporation System, 28 Liberty St., Floor 42, New York, NY 10005.

3. Upon information and belief, Defendant MACKIE WOLF ZIENTZ & MANN, P.C.

   ("Mackie Wolf"), is a law firm doing business in the State of Tennessee.  It may be

   served at 7100 Commerce Way, Suite 273, Brentwood, Tennessee 37027.

4. Defendant Specialized Loan Servicing, LLC ("SLS") is a mortgage company doing

   business in the State of Tennessee.  It may be served with process at Specialized Loan

   Servicing, LLC, c/o United Agent Group, Inc., 155 E. Boardwalk #490, Fort Collins, CO

   80525.  At all times material hereto, Defendant SLS acted as the servicer of the mortgage

   loan issued to the Plaintiff, Edward Muhammad.  For purposes of the laws of the State of

   Tennessee, SLS acted as an employee, and/or agent of Deutsche Bank.

## II.   FACTS

5. Plaintiff received a mortgage loan in the amount of $190,738.00 on July 29, 2004, from

   First Franklin Financial Corp., subsidiary of National City Bank of Indiana ("First

   Franklin"), a corporation existing under the laws of Delaware (first mortgage—Exhibit

   1).

6. The plaintiff received another mortgage loan on July 29, 2004, from First Franklin

   Financial, a division of National City Bank of Indiana in the amount of $47,684.60.  At

   the time, Plaintiff signed a promissory note ("note") (Exhibit 2) and a Deed of Trust

   ("mortgage") (Exhibit 3).  This was the **second** mortgage loan on the property and the

loan which is the subject of this case.  The Deed of Trust listed Fearnley and Califf Law Office of Shelby County as the Trustee.

7. On February 18, 2014, PNC BANK, N.A., SUCCESSOR BY MERGER TO NATIONAL CITY BANK OF INDIANA DBA FIRST FRANKLIN, A DIVISION OF NATIONAL CITY BANK OF INDIANA BY BANK OF AMERICA, N.A., AS ITS ATTORNEY IN FACT, by Martha Munoz, purported to assign the second mortgage and Note to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE FIRST FRANKLIN MORTGAGE LOAN TRUST 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS (assignment—Exhibit 4).

8. Subsequently, on November 21, 2019, MACKIE WOLF ZIENTZ & MANN, P.C. (hereinafter "Mackie Wolf"), was appointed Substitute Trustee by Defendant SLS (Substitution of Trustee—Exhibit 5).  On January 10, 2020, Mackie Wolf held a sale and sold the property to Defendant Deutsche Bank (Substitute Trustee's Deed—Exhibit 6).

9. Plaintiff did not receive notice of the foreclosure sale prior to January 10, 2020; and he only found out about the sale after receiving a phone call from an "asset manager." Plaintiff does not know who the asset manager is, or from where he was calling.

**A. *Defendants' failure to provide notice of default, opportunity to cure, and of the foreclosure sale***

10. The Deed of Trust provides that the plaintiff should have received notice of the alleged default, his right and opportunity to cure the default, and notice of the foreclosure sale. *See* Ex. 3, ¶17.

11. The subject Deed of Trust provides in relevant part:

Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and...Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

12. Plaintiff did not receive the aforementioned required notice.

### III.   CAUSES OF ACTION

Claim for Declaratory Judgment

*A.  The Plaintiff Seeks a Declaratory Judgment that there has been no Assignment of the Deed of Trust*

13. The Plaintiff is in need of an Order of this Honorable Court, declaring rights and obligations of the parties, as to the mortgage note and Deed of Trust which are the subject of the aforementioned lawsuit, and in support thereof would state as follows:

14. The February 18, 2014 Assignment of Deed of Trust (Ex. 4) to Defendant Deutsche Bank is invalid because upon information and belief, the "signature" of Martha Munoz is a known forgery.

*B. The Plaintiff Seeks a Declaratory Judgment that Deutsche Bank is Not the Holder of the Plaintiff's Promissory Note with First Franklin Financial, a division of National City Bank of Indiana*

15. Defendant Deutsche Bank is not in possession of a properly endorsed promissory note which has been endorsed to them for the purposes of enforcement, therefore they cannot enforce the promissory note the Plaintiff has signed with First Franklin.

16. Pursuant to T.C.A. Sec. 47-3-201, Tennessee law requires  negotiation of the instrument in order to be qualified as a "holder" (defining negotiation as transfer and indorsement by the holder).

17. Pursuant to T.C.A. 47-3-203. (a)  An instrument is transferred when it is delivered by a

4

person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

18. Pursuant to T.C.A. 47-3-204. Endorsement means ... (a) "Endorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring endorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

19. The Plaintiff avers upon information and belief that the Defendant Deutsche Bank is 1) not in possession of his promissory note or, in the alternative, 2) it was not transferred to a person other than its issuer for the purposing of giving it the right to enforce the agreement. Specifically, the Plaintiff would note that even if Defendant Deutsche Bank is in possession of the actual original promissory note, such a transfer would have been effectuated by someone without authority to transfer said note and therefore, said transfer would have no force and effect.

20. Upon information and belief, the endorsement *in blank* on the Note, allegedly signed by Carolyn M. Broome, is a known forgery.

21. The Plaintiff is therefore in need of a declaratory judgment, declaring that these Defendants are not entitled to enforce this note, nor foreclose on the Plaintiff's property

based upon their inability to establish standing to foreclose based upon Tennessee's laws regarding endorsement, transfer and negotiation.

<u>Claim for Wrongful Foreclosure</u>

22. The Plaintiff avers that the defendants have no right to begin ANY process to enter onto the lands of the plaintiff, whether by forcible entry and detainer ("FED") or nonjudicial foreclosure, as they cannot establish they have a legal right to possession as a matter of law.

23. The Plaintiff avers that the Trustee, Mackie Wolf, must have proceeded in strict compliance with the contractual terms of the process of foreclosure as provided in the Deed of Trust for any such foreclosure to be valid—it did not.

24. The failure by Defendant Deutsche Bank to demonstrate a valid assignment by ANY parties to the Plaintiff's mortgage is a failure to strictly comply with the Terms of the Deed of Trust and renders any potential foreclosure sale void as a matter of law.

*<u>The plaintiff demands production of the original note as there is a genuine question as to the authenticity of the original.</u>*

25. The Plaintiff disputes the authenticity of any note in the possession of the Defendants.  The Plaintiff therefore demands production of the original document for inspection examination, testing, and copying.

26. Under Tennessee law, production of the original document is required:

Article X. Contents of Writings, Recordings, and Photographs

<u>RULE 1002: REQUIREMENT OF ORIGINAL.</u>

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress or the Tennessee Legislature.

<u>Advisory Commission Comments.</u>

6

This rule states the traditional preference for an "original," but Rules 1001(4) and 1003 should be consulted. Usually the court will admit machine copies.

RULE 1003: ADMISSIBILITY OF DUPLICATES.

A duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original.

Advisory Commission Comments.
This rule is the key to an understanding of the best evidence rule as the Commission contemplates it. Normally businesspeople and lawyers accept machine copies as authentic. There is no reason why courts should not take the same approach in most instances. See Rule 1001(4) for the definition of "duplicate."

## IV.   REQUEST FOR INJUNCTIVE RELIEF

27. As stated herein, the purported Substitute Trustee, Mackie Wolf, sold the subject property to Defendant Deutsche Bank on January 10, 2020.

28. To Plaintiff's knowledge, Defendant Deutsche Bank has not taken possession of the property.

29. In order to obtain injunctive relief in a foreclosure action, T.C.A. § 29-23-202 requires a party to distinctly state how, when, and to whom the debt or any part of the Debt secured aforementioned has been paid, or any circumstances of fraud which vitiate the contract. Therefore, the plain language of the statute specifically authorizes the moving party to allege 1) that the debt has been paid; 2) that part of the debt has been paid or 3) fraud which vitiates the contract in order to entitle them to injunctive relief. Any one of these grounds being pled in the complaint is sufficient to establish the Plaintiff's entitlement to injunctive relief.

30. Generally, only persons with an interest in the property subject to the deed of trust have standing to seek an injunction to prevent foreclosure, and persons who have no interest in the property lack standing. *See 59 C.J.S. Mortgages* §755 (2014). The Plaintiff has

7

standing in this case, as he is a party to the deed of trust under which the sale was sought. *See Montenegro v. Ocwen Loan Serv'ing, LLC*, 419 S.W.3d 561, 567 (Tex. App. 2013) (finding that as a general rule either the mortgagor or a party with an interest in the property has standing to contest the validity of a foreclosure sale pursuant to a deed of trust); *Banc of America Leasing & Capital, LLC v. 3 Arch Tr. Servs., Inc.*, 103 Cal. Rptr. 3d 397, 406 (Cal. App. 2009).

31. In compliance with T.C.A. 29-23-202, the Plaintiff would specifically aver that before the so-called "transfer" of his mortgage to this defendant, part of the mortgage indebtedness had been paid by him, to First Franklin or its servicers.

32. In regard to fraud which vitiates the contract, said fraud exists in this case. In the seminal case of *Shelby Electric Co., Inc. v. Forbes*, 205 S.W.3d 448 (Tenn. Ct. App. 2005), the Tennessee Supreme Court held that ALL types of fraud vitiate a contract, and EVERY transaction.

33. In reaching its decision, the *Shelby Electric Co., Inc.* Court noted: It is well settled in Tennessee that

> ...fraud vitiates all that it touches. [it] vitiates and avoids all human transactions... It is as odious and as fatal in a court of law as in a court of equity........ It is a thing indefinable by any fixed and arbitrary definition. In its multiform phases and subtle shapes, it baffles definition. It is said, indeed, that it is part of the equity doctrine of fraud not to define it, lest the craft of men should find ways of committing fraud which might evade such a definition. **In its most general sense, it embraces all acts, omissions, or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. A judicial proceeding *in rem*, while generally binding upon all persons, is no more free from the fatal taint of fraud than a proceeding *in personam*, or an individual contract** [emphasis added]. When once shown to exist, it poisons alike the contract of the citizen, the treaty of the diplomat, and the solemn judgment of the court.

*Id.* at 455 (citations omitted).

34. Therefore, under Tennessee law, the Plaintiff can plead ANY type of fraud, (*i.e.*, any acts, omissions, or concealments which involve a breach of legal and equitable duty, trust or confidence justly reposed, and which would be injurious to the Plaintiff, or an act by which an undue or unconscientious advantage has been taken) and any of these acts by definition will vitiate the mortgage contract. *Id.*

Assignment Fraud Vitiates the Mortgage Contract

35. Plaintiff alleges that the February 18, 2014 Assignment of Deed of Trust (Ex. 4) to Defendant Deutsche Bank is invalid because upon information and belief, the "signature" of Martha Munoz is a known forgery. Also, upon information and belief, the endorsement *in blank* on the Note, allegedly signed by Carolyn M. Broome, is a known forgery. As a result of these acts of fraud, any existing contract between the Plaintiff and the Defendant has been vitiated.

36. Defendants made materially false statements that Deutsche Bank was the true lender, entitled to enforce Plaintiff's mortgage note, and foreclose on his home. These material misstatements of fact, as well as the failure to disclose that they were not in fact the holders of the promissory note is fraud in the performance of this agreement which vitiates the Plaintiff's mortgage contract.

37. The plaintiff will suffer immediate and irreparable injury, loss, or damage pending a final judgment in this cause if this action is not stayed pending the final outcome of this litigation. The plaintiff fears he will not have the opportunity for a full hearing on the merits of his claims before Defendants seek and obtain a forcible entry and detainer warrant and takes possession of the property.

38. Furthermore, a money judgment will not make the Plaintiff whole, as his right to possession

of his property will be forever lost.

39. Finally, there is a substantial likelihood that Plaintiff will succeed on the merits as the records of the Shelby County Register clearly demonstrate that Deutsche Bank is not a proper party to the mortgage contract. Furthermore, even if this defendant is the property party, there was no strict compliance with the Deed of Trust's notice requirements before the foreclosure and sale, and therefore, they are void, and must be set aside.

40. The Plaintiff requests that this Honorable Court set a minimal bond and set the matter for hearing on a permanent injunction.

## V.    DAMAGES

41. As a result of the acts complained of herein, the Plaintiff has suffered damages, which include but are not limited to:

42. The potential loss of his home at 5094 Winberry Cove, Arlington, TN 38002, which he values at $250,000.00.

43. Payments made to the Defendants who had no right to take said payments in an amount to be determined at trial.

44. Compensatory damages in the amount of $500,000.00.

45. Costs and attorney's fees related to the prosecution and defense of the above referenced action;

WHEREFORE, THE PLAINTIFF PRAYS this Honorable Court grant the following relief:

46. Set the matter for a jury trial on all issues;

47. Award the Plaintiff damages in the amount of $750,000.00 plus attorney's fees, interest and costs; and

48. for such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

_____
CURTIS D. JOHNSON, JR.
BPR No. 015518
Attorney for the Plaintiff
1407 Union Avenue, Suite 1002
Memphis, Tennessee 38104
Telephone: (901) 725-7520
Facsimile:  (901) 725-7570
cjohnson@johnsonandjohnsonattys.com

Return To:
Fearnley and Califf, PLLC
6389 Quail Hollow, Suite 202
Memphis, Tennessee 38120
File No: *20Y040057*

Return To:

**FIRST FRANKLIN FINANCIAL CORPORATION**
2150 North First St.
San Jose, CA  95131
Loan number: 0035143593/5,634

Prepared By:   CAROLYN M BROOME

The Maximum Principal Indebtedness for Tennessee recording tax purposes is $   190,738.00   .

————————————————[Space Above This Line For Recording Data]————————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated      **July 29, 2004**                   ,
together with all Riders to this document.
(B) "Borrower" is

**EDWARD MUHAMMAD** , unmarried

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
**First Franklin Financial Corp., subsidiary of National City Bank of Indiana**
Lender is a    **Corporation**
organized and existing under the laws of **Delaware**

TENNESSEE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3043  1/01

VMP-6(TN) (0402)
Page 1 of 15                    Initials: EM
VMP Mortgage Solutions (800)521-7291



Document # L074TN

Ex-1

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 04137286

Lender's address is **2150 North First St.,**
**San Jose, CA  95131**
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is   **FEARNLEY AND CALIFF LAW OFFICE**

a resident of **Shelby County**                                    , Tennessee.
(E) "Note" means the promissory note signed by Borrower and dated  **July 29, 2004**
The Note states that Borrower owes Lender
**ONE HUNDRED NINETY THOUSAND SEVEN HUNDRED THIRTY EIGHT & 00/100**    Dollars
(U.S. $    **190,738.00**                ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  **August First, 2034**        . The
maximum principal indebtedness for Tennessee recording tax purposes is $    **190,738.00**        .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | **Prepayment Rider** |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: 

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Shelby :

[Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

**Legal Description attached hereto and made a part hereof**
**Adjustable Rate Rider attached hereto and made a part hereof**


**Prepayment Rider attached hereto and made a part hereof**


Derivation Clause

The instrument constituting the source of the Borrower's interest in the foregoing described property was a Warranty Deed                                    recorded
simultaneously herewith

in the Register's Office of        Shelby County                County, Tennessee.
Parcel ID Number: D0149V C00024                        which currently has the address of
5094 WINBERRY COVE                                                              [Street]
ARLINGTON                                    (City) , Tennessee        38002    [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____

VMP-6(TN) (0402)                    Page 3 of 16                    Form 3043   1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance

Initials: _EM_

Document # L077TN

premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: *EM*

Document # L078TN

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

Initials: _ЄИ_

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there

Initials: _EM_

Document # L080TN

is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

Initials: _EM_



-6(TN) (0402)                    Page 10 of 15                    Form 3043   1/01

Document # L083TN

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Initials: _EM_

-6(TN) (0402)        Page 11 of 15        Form 3043   1/01

Document # L084TN

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of



release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Waivers.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

Initials: _CM_

Document # L086TN

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

Witnesses:

_____N/A_____ _____Edward Muhammad_____ (Seal)
                          EDWARD MUHAMMAD                -Borrower

_____N/A_____

                          _____ (Seal)
                                                    -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                  Non    -Borrower                       Non    -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                              -Borrower


Document # L087TN

**STATE OF TENNESSEE,** _Shelby_ County ss:

On this _2a_ day of _July, 2004_ , before me personally appeared

EDWARD MUHAMMAD, _unmarried person_

to me known to be the person(s) described in and who executed the foregoing instrument, and who acknowledged the execution of the same to be his/her/their free act and deed. Witness my hand and official seal.

**My Commission Expires:**

_____
Notary Public

Initials: _____

-6(TN) (0402)                    Page 15 of 15                    Form 3043   1/01

Document # L088TN

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **29th** day of **July 2004** , , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**First Franklin Financial Corp., subsidiary of National City Bank of Indiana**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **5094 WINBERRY COVE, ARLINGTON, Tennessee 38002**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **6.750** %. The Note provides for changes in the interest rate and the monthly payments, as follows:
## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of **August** , **2007** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family
Page 1 of 3
-6268008 (9710)       ELECTRONIC LASER FORMS, INC. - (800)327-0545

Document # L390X

CJM

first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and One-Half** percentage point(s) ( **5.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.750** % or less than **6.750** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months; subject to the following limits: My interest rate will never be greater than **12.750** %, nor less than **6.750** %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the

-8268008 (9710)                                 Page 2 of 3

Document # L391X

CM

transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Edward Muhammad_ _____ (Seal)
EDWARD MUHAMMAD                  -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)              Non   _____ (Seal)
                   Non   -Borrower                               Non   -Borrower

_____ (Seal)                    _____ (Seal)
                        -Borrower                                          -Borrower

6268008 (9710)                          Page 3 of 3

Document # L392X

EM

# PREPAYMENT RIDER

This Prepayment Rider is made this **29th** day of **July**        **, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the Security Deed (the "Security Instrument") of the same date given by the undersigned ( the "Borrower" ) to secure Borrower's Note ( the "Note" ) to
**First Franklin Financial Corp., subsidiary of National City Bank of Indiana**

("the Lender") of the same date and covering the property described in the Security Instrument and located at:
**5094 WINBERRY COVE, ARLINGTON, Tennessee 38002**

ADDITIONAL COVENANTS.   In addition to the covenants and agreements made in the Security instrument, Borrower and Lender further covenant and agree as follows:

Borrower can make a partial prepayment at anytime without paying any charge.  Borrower may make a full prepayment at any time subject to a prepayment charge as follows:

If within the first    **3**    year(s) after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on any amount prepaid in any 12 month period in excess of 20% of the unpaid balance. The prepayment charge will equal the interest that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect under the terms of the Note at the time of the full prepayment.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it.  This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_/s/ Edward Muhammad_ (Seal)               _____ (Seal)
EDWARD MUHAMMAD

_____ (Seal)               _____ (Seal)

_____ (Seal)               _____ (Seal)

---

Adjustable Rate Prepayment Rider - First Lien- AK, AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, ID, IA, KS, LA, MA, MD, MS, MT, NE, NV, NH, NJ, NM, NY, ND, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, VT, WA, WY

Document # L0028

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 04137286

Loan No.: 0035143593

Date: July 29, 2004

Property Address: 5094 Winberry Cove
                  Arlington, TN 38002

EXHIBIT "A"

LEGAL DESCRIPTION

Lot 24, Final Plat, Phase 1, Abington Woods Subdivision, as shown on plat of
record in Plat Book 189, Page 52, in the Register's Office of Shelby County,
Tennessee, to which reference is hereby made for a more particular description of
said property.

**NOTE AND HOME EQUITY LINE AGREEMENT**

Date: 7/29/2004

**1.   DEBTOR(S).**   EDWARD MUHAMMAD,

Address: 5094 WINBERRY COVE, CORDOVA, Tennessee 38002

**2.   DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" or "us" means First Franklin Financial, a division of National City Bank of Indiana, One National City Center, Indianapolis, Indiana 46255, and its successors and assigns. "Note" means this promissory note and security agreement and all related attachments and addenda. "Loan" means the loan evidenced by this Note. "Property" means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

**3.   PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $   47,684.60   , which includes a prepaid finance charge of $   392.79   , plus interest on the principal sum outstanding and other sums owed under this Note until paid in full at the per annum rate of   8.250   %. You will make a monthly payment in the amount of U.S.$   405.31   on the 1st day of each month beginning on   September 1st, 2004   .

If on   August 1st, 2024   , you still owe amounts under this Note, you will pay those amounts in full on that date. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding such charges to the principal balance of this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. You will mail your monthly payments to: National City Home Loan Services, 150 Allegheny Center Mall, Pittsburgh, PA 15212, or such other place as we may specify. If you are making a payment by an overnight delivery service only, you will send it to National City, 5101 Interchange Way, Louisville, KY 40229 or such other place as we may specify.

**4.   PROPERTY   5094 WINBERRY COVE, ARLINTON, Tennessee 38002**

**5.   DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

**6.   LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFERRAL CHARGE; SERVICE CHARGES.** If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge. This late charge will be $16.00. If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge of $20. If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. We will continue to earn interest on the unpaid principal balance. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be $6 per copy. We will not charge you for documents we are required to provide you by law. You agree that we may also charge you a fee, not otherwise enumerated herein, for services that we perform for you that you have requested.

**7.   INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and shall be responsible for its loss or damage. You will notify us promptly of any loss or damage to the Property. You agree to obtain primary insurance coverage (including furnishing existing coverage) from any insurer you want that is acceptable to us provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (a) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law. You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law. All insurance proceeds we receive (including a refund of premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property. If the Property is destroyed, you must still pay us whatever you owe under this Note. If you fail to maintain the required insurance, we may at our sole option obtain coverage at your expense that we believe are necessary to protect our interests in the Property. You agree to pay the expense of such insurance on demand or agree that we may add such expense to this Loan. You acknowledge that insurance we purchase may cost substantially more than insurance you could purchase. Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note. You also assign to us any other insurance proceeds related to the Note or our interest in the Property. You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you.

**8.   PREPAYMENT.** You may voluntarily prepay the principal sum of this Note in part at any time. If you voluntarily prepay the principal sum of this Note in full within the first   0   months of this Note, you agree to pay a voluntary prepayment charge. This voluntary prepayment charge will be equal to   0   % of the principal balance at the time of prepayment. The prepayment charge will apply to amounts prepaid within 60 days of prepayment in full, after deducting any required refund. Unless refund of all or a portion of the prepaid finance charge is required by law, no portion of the prepaid finance charge described in Section 3 will be refunded. Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

**9.   SECURITY AGREEMENT.** To the extent permitted by law, you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note: (a) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d) unless purchased with the proceeds of this Loan. If we have a prior lien on your principal residence as security for future obligations, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; and (c) the substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are

© 2004 National City Corporation

LX-2

REDACTED
EM

Page 1 of 4

purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest. You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default. Upon our request, you will deliver any documents that are necessary for us to perfect our security interest, or, if applicable, follow our instructions to perfect our security interest in the Property. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interests in the Property.

**10.      PROPERTY MAINTENANCE AND USE.** You will maintain the Property in good condition except for ordinary wear and tear, and taxes related to this Loan and the Property. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or decrease its adverse claims. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or decrease its functionality without our prior written consent. You will permit us to inspect the Property at a time which is reasonably convenient. If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral. You will not use, or permit others to use, the Property: (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose.

**11.      DEFAULT AND REMEDIES.** You will be in default under this Note if: (a) you fail to make any payment or pay other amounts owing under this Note when due; (b) you fail to keep any of your agreements under this Note or under any other agreement with us; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated; (f) the Property is destroyed, determined by us to be uninsurable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings; or (g) you are in default on any obligation that is secured by a lien on the Property. If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. If you are in default, prior to our obtaining a judgment against you, any amounts owing under this Note will continue to bear interest at the interest rate stated in this Note. If we obtain a judgment against you for any amounts owing under this Note, the amount of such judgment will bear interest at the rate permitted by Indiana law for judgments from the date of judgment; (bb) demand that you vacate the Property and make it available to us at a time that is reasonably convenient. You agree to comply with such demand; (cc) sell, lease, or otherwise dispose of the Property without prior demand, unless otherwise required by law. Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; and (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and collect reasonable collection costs, attorneys' fees (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 506 and applicable state law.

**12.      PROPERTY CONDITION.** You agree that with respect to any Property: (a) it is free from all material defects, in proper operating order and fit for all intended purposes; (b) that our making this Loan was based in part upon the value and condition of the Property as represented by you; (c) we did not directly or indirectly offer, sell or provide it to you; and (d) we are not a seller, supplier, merchant or warrantor. Accordingly, except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility.

**13.      ADDITIONAL AGREEMENTS.** You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent. We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent; (b) this Note is between you and us and, except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of our rights under this Note without waiving or otherwise affecting such rights; (e) the provisions of this Note are only to the extent permitted by applicable law. Any part of this Note that cannot be enforced will be void, but the remaining parts will remain in effect; (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party; (h) we can correct errors in this Note as provided in 15 U.S.C. Section 1640 upon notice to you even if such errors are contract terms and you agree to be bound by such corrections. Upon our request, you will promptly re-execute this Note to correct errors in this Note. You can change any term of this Note only in a writing signed by us; (i) the Bank is a national bank located in Indiana and your application for this Loan and the making of this Loan occurred in Indiana. Therefore, this Note shall be governed by and construed in accordance with (y) Federal laws and regulations including but not limited to 12 USC Section 85 and (z) the laws of Indiana, to the extent Indiana laws are not preempted by federal laws or regulations, and without regard to conflict of law principles; (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements. An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original; (k) except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address. Except as otherwise specified, all notices and payments to us must be sent to National City, 150 Allegheny Center Mall, Pittsburgh, PA 15212 Attn: Customer Service, Locator #7-23-551, or such other place as we may designate. Our failure or delay in providing you coupon books, billing statements or other payment instructions will not relieve you of your obligations under this Note; (m) all payments must be in lawful money of the United States; (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that he is authorized to enter into this Note; (o) we will not be responsible for any personal items in or on vacated Property. We will make a reasonable effort to return such items to you or have you reclaim them from us provided you notify us within 5 business days of our taking repossession and items such items. Even if you notify us, you partial payments without losing any of your rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 150 Allegheny Center Mall, Pittsburgh, PA 15212 Attn: Customer Service, Locator #7-23-551 or such other place as we may designate. If your payment is made to any other address, we may accept the payment without losing any of our rights; (q) our application of your payments or other proceeds is reasonable unless another method is required by law, in which case that method shall be reasonable; (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) except as otherwise prohibited by law, Bank may provide to others, including, but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications or offering you products or services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, account number and social security number; (t) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or

© 2004 National City Corporation

Case 14-23370    Claim 1-1 Part 2    Filed 07/25/14    Desc Exhibit Note    Page 3 of 4

**REDACTED**

regulations; (t) all actions under this Note requiring our consent are at our sole discretion, and such consent may be withheld for any reason; (v) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (w) our typewritten name in Section 2 will constitute our signature for purposes of this Note; (x) we have an established business relationship with you, and unless otherwise prohibited by law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service; (y) all amounts owed under this Note shall be without relief from valuation and appraisement laws; (z) we are authorized to sign on your behalf any document required to enforce our interests under this Note; (aa) disclosures included in this Note but not required by law are not an admission or waiver of rights by us; (bb) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD1/HUD1A provided in connection with this Loan, which will be nonrefundable to the extent permitted by law; and (cc) in this Note, the term "affiliates" means current and future affiliates of National City Bank of Indiana, including, but not limited to, the following National City Corporation subsidiaries: National City Bank, National City Bank of Indiana, including, but Bank of Pennsylvania, National City Bank of Southern Indiana, National City Bank of Michigan/Illinois, National City National City Bank of Kentucky, Madison Bank and Trust Company, National City Home Loan Services, Inc., First Franklin Financial Corporation, National City Mortgage Co. and National City Mortgage Services Co.

14.    **ADDITIONAL NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated. For purposes of the immediately following *Notices to Cosigner*, "bank" means us.

> **NOTICE TO COSIGNER**
> You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of *your* credit record. This notice is not the contract that makes you liable for the debt.

**NOTICE TO ALL SIGNERS**
You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, 150 Allegheny Center Mall, Pittsburgh, PA 15212 Attn: Customer Service, Locator 47-23-551 or such other place as we may designate.

**OTHER NOTICES**

If the Property is located in California: Lender, may at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Property is located in Colorado: The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the Property is located in Florida: FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES.

If the Property is located in Iowa (this is a consumer credit transaction) or Kansas: NOTICE TO CONSUMER: 1. Do not sign this paper (agreement) before you read it. 2. You are entitled to a copy of this paper (agreement). 3. You may prepay the unpaid balance at any time and may be entitled to receive a refund of unearned charges in accordance with law. 4. If you prepay the unpaid balance you may have to pay a prepayment penalty.

If the Property is located in Iowa and the principal amount of this Loan exceeds $20,000: IMPORTANT: READ BEFORE SIGNING, THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

If the Property is located in Maryland: We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Property is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Property is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Property is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT,

© 2004 National City Corporation                    Document REDACTED                    Page 3 of 4

Case 14-23370   Claim 1-1 Part 2   Filed 07/25/14   Desc Exhibit Note   Page 4 of 4

REDACTED

THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Property is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the Property is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Property is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Property is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

If the Property is located in Wisconsin: NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

15.   SIGNATURES. YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS NOTE INCLUDING THOSE ON PAGES 1 THROUGH 4 AND IN THE DISCLOSURE STATEMENT WHICH ARE INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1. SEE PAGES 1, 2, 3 AND 4 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

_Edward Muhammad_ (Seal)
EDWARD MUHAMMAD        - Borrower

_____ (Seal)
                       - Borrower

_____ (Seal)
                       - Borrower

_____ (Seal)
                       - Borrower

FOR MICHIGAN GUARANTORS ONLY: Guaranty Agreement. For value received, you, the undersigned guarantors, jointly, severally and unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note. Upon default, we may proceed against any of you without first proceeding against any Debtor. The liability of each of you will be primary and will not be affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law. Each of you voluntarily and knowingly waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty. Each of you agrees to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty. Each of you acknowledges that you have read and agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below.

Guarantor: _____
           Type or print name of Guarantor

Guarantor: _____
           Type or print name of Guarantor

X_____
   Guarantor's signature

X_____
   Guarantor's signature

PAY TO THE ORDER OF

WITHOUT RECOURSE
FIRST FRANKLIN FINANCIAL CORPORATION
X_____
CAROLYN M. BROOME, CLOSER

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 04137287

Return To:
Fearnley and Califf, PLLC
6389 Quail Hollow, Suite 202
Memphis, Tennessee  38120
File No: 200406027

When recorded mail to:
FIRST FRANKLIN FINANCIAL CORPORATION
2150 North First St.
San Jose, CA  95131
Loan number: 0035143601/5,520
This instrument was prepared by:  CAROLYN M BROOME

Maximum principal indebtedness in Tennessee for recording tax purposes is $        47,684.60

## DEED OF TRUST

THIS DEED OF TRUST is made this  29th        day of  July                    ,    2004      ,
among the Grantor,  EDWARD MUHAMMAD  , unmarried

(herein "Borrower"),

FEARNLEY AND CALIFF LAW OFFICE
           of Shelby County                         , Tennessee (herein "Trustee").
and the Beneficiary,  First Franklin Financial, a division of
National City Bank of Indiana                                  , a corporation organized and
existing under the laws of  Delaware                               , whose address is
2150 North First St. , San Jose, CA  95131                    (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
Shelby                                                                       , State of Tennessee:
Legal Description attached hereto and made a part hereof
Balloon Rider attached hereto and made a part hereof

Assessors Parcel Number: D0149V C 00024
which has the address of  5094 WINBERRY COVE                          .          ARLINGTON     ,
                                    [Street]                                          [City]
Tennessee       38002          (herein "Property Address");
            [ZIP Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply
such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and
all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are
hereinafter referred to as the "Property";
TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated   7/29/2004
                        and extensions and renewals thereof (herein "Note"), in the principal sum of
U.S. $      47,684.60  , with interest thereon, providing for monthly installments of principal and interest,
with the balance of the indebtedness, if not sooner paid, due and payable on  August 1st, 2024           ;
the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this
Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.
Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and
convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants
that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to
encumbrances  of record.
UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest
indebtedness evidenced by the Note and late charges as provided in the Note.

TENNESSEE - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

Form 3843
-76(TN) (9810).01          Amended 6/90
Page 1 of 4                 Initials  EM
VMP MORTGAGE FORMS - (800)521-7291



Ex-3

rument # L074TW02

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 04137287

0035143601

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by

Document # L075TN02
EM

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 04137287

0035143601

reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in paragraph 12 hereof. Trustee, without demand on Borrower, shall sell the Property at the time and under the terms designated in the notice of sale at public auction to the highest bidder. Lender or Lender's designee may purchase the property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto. If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of such purchaser, shall be removable by process such as forcible and unlawful detainer, and hereby agrees to pay to such purchaser the reasonable rental value of the Property after sale.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust, due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's

0035143601

interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Deed of Trust, Lender shall release this Deed of Trust without charge to Borrower.

21. Substitute Trustee. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. Waiver of Homestead, Redemption and Spousal Rights. Borrower waives all right of homestead exemption in and equitable and statutory redemption of the Property and Borrower hereby relinquishes all right of dower, curtesy and statutory or elective rights in the Property.

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_Edward Muhammad_ (Seal)
EDWARD MUHAMMAD                -Borrower

_____ (Seal)          _____ (Seal)
Non-Borrower                    -Borrower

                            _____ (Seal)
                                 -Borrower

_____ (Seal)          _____ (Seal)
Non-Borrower                    -Borrower

                            (Sign Original Only)

STATE OF TENNESSEE,        Shelby        County ss:

On this 2⁵ day of July, 2004,                , before me personally appeared
Edward Muhammad _____ _____ to me known to be the person(s) described in and who executed the foregoing instrument, and who acknowledged the execution of the same to be ___ free act and deed. Witness my hand and official seal.

My Commission Expires:

                            Notary Public

CARY R. CALIFF
NOTARY PUBLIC
AT LARGE
SHELBY CO.

-76(TN) (28101.01)          Page 6 of 6          Form 3843

Loan No.: 0035143593

Date: July 29, 2004

Property Address: 5094 Winberry Cove
                  Arlington, TN 38002


### EXHIBIT "A"

### LEGAL DESCRIPTION


Lot 24, Final Plat, Phase 1, Abington Woods Subdivision, as shown on plat of
record in Plat Book 189, Page 52, in the Register's Office of Shelby County,
Tennessee, to which reference is hereby made for a more particular description of
said property.

Tom Leatherwood, Shelby County Register of Deeds: Instr. # 14020872



Recording Requested By:
**Bank of America**
Prepared By:
**Diana De Avila**
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID# 1632342373368767

Property Address:
5094 Winberry Cove
Arlington, TN 38002-8920

TN0-ADT 21619669 2/18/2014 FCL01

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3232 NEWMARK DR, MIAMISBURG, OH 45342 does hereby grant, sell, assign, transfer and convey unto DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE FIRST FRANKLIN MORTGAGE LOAN TRUST 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS whose address is C/O BAC, M/C: CA6-914-01-43, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary: **FIRST FRANKLIN FINANCIAL, A DIVISION OF NATIONAL CITY BANK OF INDIANA**
Original Borrower(s): **EDWARD MUHAMMAD, UNMARRIED**
Original Trustee: **FEARNLEY AND CALIFF LAW OFFICE**
Date of Deed of Trust: 7/29/2004
Original Loan Amount: $47,684.60
Recorded in SHELBY County, TN on: 8/16/2004, book N/A, page N/A and instrument number 04137287

Maximum principle indebtedness for Tennessee Recording Tax purposes is --$0.00-- exactly same collateral as prior debt. Does not increase principle.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
Dated: 2-18-14

PNC BANK, N.A., SUCCESSOR BY MERGER TO NATIONAL CITY BANK OF INDIANA DBA FIRST FRANKLIN, A DIVISION OF NATIONAL CITY BANK OF INDIANA BY BANK OF AMERICA, N.A. AS ITS ATTORNEY IN FACT

By: _____
Martha Munoz
Assistant Vice President

State of California
County of Ventura

On FEB 18 2014 before me, **Carmen L. Morse**, Notary Public, personally appeared **Martha Munoz**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Carmen L Morse
My Commission Expires: October 16, 2015

(Seal)

CARMEN L. MORSE
Commission # 1955846
Notary Public - California
Los Angeles County
My Comm. Expires Oct 16, 2015

Ex-4

PREPARED BY AND RETURN TO:
Jerry A. Bridenbaugh
Mackie Wolf Zientz & Mann, P.C.
Cool Springs Commons, Suite 273
7100 Commerce Way
Brentwood, TN 37027
PHONE: (615) 238-3630

## SUBSTITUTION OF TRUSTEE

WHEREAS, EDWARD MUHAMMAD executed a Deed of Trust dated July 29, 2004, to Fearnley & Califf Law Office, as Trustee, for the benefit of FIRST FRANKLIN FINANCIAL CORP., A DIVISION OF NATIONAL CITY BANK OF INDIANA, being of record as Instrument No. 04137287 in the Register's Office of Shelby County, Tennessee; and,

WHEREAS, said Deed of Trust expressly provides that the Lender is empowered to replace the Trustee therein named and appoint a successor trustee by the execution of an instrument to that effect and by filing same in the Register's Office of the County in which the property is situated; and,

WHEREAS, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS, declares itself to be the Lender; and,

WHEREAS, the Lender has appointed the Substitution of Trustee prior to the first notice of publication as required by T.C.A. 35-5-101, and ratifies and confirms all actions taken by the substitute trustee subsequent to said date of substitution and prior to the recording of this substitution.

NOW, THEREFORE, Lender does hereby nominate and appoint Mackie Wolf Zientz & Mann, P.C., as Substitute Trustee.

Should the Lender become the last and highest bidder at the foreclosure sale, the Substitute Trustee is hereby authorized to transfer and assign said bid and to convey title to the property to Lender, its successors and assigns or to whomsoever the Lender shall authorize. The statement in the Substitute Trustee's deed that the Lender has requested transfer of its bid to grantee(s) shall be binding on all parties and conclusive evidence in favor of the grantee or other parties thereto, that the Substitute

MWZM No. 19-000104-370-1

Ex-5

Trustee was duly authorized and empowered to execute same.

IN WITNESS WHEREFORE, the undersigned, Lender, has caused this instrument to be executed by its duly authorized officer, and agent on ___21___ day of ___November___, 2019.

SPECIALIZED LOAN SERVICING LLC as Attorney in Fact for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS

Name: __Steven Ross__

Title: __Second Assistant Vice President__

## ACKNOWLEDGEMENT

State of Colorado          §
County of Douglas          §

BEFORE ME, the undersigned notary public of the State and County aforesaid, on this day personally appeared ___Steven Ross___, as its __Second Assistant Vice President__ for SPECIALIZED LOAN SERVICING LLC as Attorney in Fact for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS, known to me to be the person whose name is subscribed to the foregoing instrument, and who acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacity herein stated.

Given under my hand and seal of office this __21__ day of ___Nov___, 2019.

_____
(Notary`s Official Signature)

_____
(Commission Expiration)

SHARON LAWFIELD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184038795
MY COMMISSION EXPIRES 10/04/2022

MWZM No 19-000104-370-1

## Certificate of Authenticity

I, Jerry A. Bridenbaugh, do hereby make oath that I am a licensed attorney and/or the custodian of the electronic version of the attached document tendered for registration herewith and that this is a true and correct copy of the original document executed and authenticated according to law.

State of Tennessee
County of Williamson

Personally appeared before me, Staci Ray, a notary public for this county and state, Jerry A. Bridenbaugh, who acknowledges that this certification of an electronic document is true and correct, and whose signature I have witnessed.

Notary's Signature

December 3, 2019
Date

MY COMMISSION EXPIRES:  March 8, 2022
Notary's Seal (If on paper)

Shelandra Y Ford Shelby County Register of Deeds: Instrument# 20004705 Page 1 of 4

This instrument prepared by:

Jerry A. Bridenbaugh
Mackie Wolf Zientz & Mann. P.C.
7100 Commerce Way, Suite 273
Brentwood. TN 37027
(615) 238-3630
MWZM No.: 19-000104-370

NO MORTGAGE
New Owner - Send Tax Bills:
Grantee's Address:
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS
TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-
THROUGH CERTIFICATES. SERIES 2007-FFB-SS
C/O SPECIALIZED LOAN SERVICING LLC
8742 LUCENT BLVD.. SUITE 300
HIGHLANDS RANCH. CO 80129

Tax ID: B01 49A0D C 0024
Property Address: 5094 Winberry Cv, Arlington, TN 38002

## SUBSTITUTE TRUSTEE'S DEED

WHEREAS, on July 29, 2004, Fearnley & Califf Law Office was named Trustee in a Deed of Trust of even date executed by EDWARD MUHAMMAD, conveying to him/her/it as Trustee the real estate hereinafter described, said Deed of Trust being executed to secure the payment of $47,684.60, principal, said Deed of Trust being recorded as Instrument No. 04137287 in the real property records of Shelby County Register's Office, Tennessee; and

The notice required by T.C.A. 35-5-101 et seq. having been met and whereas, MACKIE WOLF ZIENTZ & MANN, P.C. was appointed Substitute Trustee under said Deed of Trust by instrument of record as Instrument No. 19126110 in the real property records of Shelby County Register's Office, Tennessee; MACKIE WOLF ZIENTZ & MANN, P.C., Substitute Trustee, at the request of the holder of said indebtedness, and under and by virtue of the powers vested in it as such Substitute Trustee in said Deed of Trust advertised the said real estate as required by law, and by the terms of said Deed of Trust by giving notice by three (3) successive publications, namely: 12/11/2019, 12/18/2019, 12/25/2019 in a newspaper of general circulation in Shelby County, Tennessee, said sale to be for cash and in bar of the equities of redemption, dower and homestead, as provided in said Deed of Trust.

If the U.S. Department of Treasury/IRS, the State of Tennessee Department of Revenue, or the State of Tennessee Department of Labor or Workforce Development are listed as Interested Parties in the advertisement, then the Notice of this foreclosure is being given to them and the Sale will be subject to the applicable governmental entities' right to redeem the property as required by 26 U.S.C. 7425 and T.C.A. §67-1-1433.

PURSUANT to said advertisement on January 10, 2020 on or about 12:00PM local time, at the Southwest Corner, Adams Avenue Entrance of the Shelby County Courthouse, Memphis, Tennessee, MACKIE WOLF ZIENTZ & MANN, P.C., individually or by and through its agent, as said Substitute Trustee, offered for sale at public outcry to the highest and best bidder, the real estate hereinafter described for cash and in bar of the herein above mentioned equities as provided in said Deed of Trust, at which DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS, submitted the highest and best bid, in the amount of $70,051.56, it being the best and highest bid.

NOW THEREFORE, in consideration of the premises, MACKIE WOLF ZIENTZ & MANN, P.C., Substitute Trustee, does hereby sell, transfer and convey to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS, its successors and assigns in fee simple, and in bar of all equities above mentioned, the following described real property, to-wit:

PROPERTY LOCATED IN THE COUNTY OF SHELBY, TENNESSEE:

Lot 24, Final Plat, Phase 1, Abington Woods Subdivision, as shown on plat of record in Plat Book 189, Page 52, in the Register's Office of Shelby County, Tennessee, to which reference is hereby made for a more particular description of said property.

THIS IS IMPROVED PROPERTY KNOWN AS 5094 Winberry Cv, Arlington, TN 38002.

Ex -6

MACKIE WOLF ZIENTZ & MANN, P.C., Substitute Trustee, convey to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS, all the rights conveyed to it as said Substitute Trustee in said Deed of Trust, including such covenants and warranties as it, as such Substitute Trustee, may lawfully make, all its actions in the premises being solely as Substitute Trustee and not otherwise under the power vested in it under said Deed of Trust herein above referred to and not as an individual.

Witness my hand and official seal at
MACKIE WOLF ZIENTZ & MANN, P.C.
COOL SPRINGS COMMONS, SUITE 273
7100 COMMERCE WAY
BRENTWOOD, TN 37027, on this 13th day of January, 2020.

Jerry A. Bridenbaugh, as agent for Substitute Trustee
MACKIE WOLF ZIENTZ & MANN, P.C.
COOL SPRINGS COMMONS, SUITE 273
7100 COMMERCE WAY
BRENTWOOD, TN 37027
PHONE: (615) 238-3630
EMAIL: INFO@MWZMLAW.COM

STATE OF TENNESSEE
COUNTY OF WILLIAMSON

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, the within named, Jerry A. Bridenbaugh, Attorney, as agent Substitute Trustee, with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who acknowledged that he executed the within instrument for the purposes therein contained.

Witness my hand and official seal at office at Brentwood, Tennessee on this 13th day of January, 2020.

Notary Public: _____

My Commission Expires: March 8, 2022

STATE OF TENNESSEE
COUNTY OF WILLIAMSON

The actual consideration or value, whichever is greater for this transfer is $70,051.56.

Affiant

Subscribed and sworn to before me, this on this 13th day of January, 2020.

Notary Public: _____

My Commission Expires: March 8, 2022

RETURN TO:
MACKIE WOLF ZIENTZ & MANN, P C
7100 COMMERCE WAY, SUITE 273
BRENTWOOD, TN 37027

PREPARED BY:
Mackie Wolf Zientz & Mann, P.C.
7100 Commerce Way, Suite 273
Brentwood, TN 37027
(615) 238-3630
MWZM 19-000104-370-1

## EXHIBIT 'A'

### SERVICEMEMBERS CIVIL RELIEF ACT AFFIDAVIT

STATE OF TENNESSEE          §
COUNTY OF WILLIAMSON     §

BEFORE ME, the undersigned authority, on this day personally appeared Jerry Bridenbaugh, who after being sworn, deposed and stated:

1. To the best of my knowledge and belief, the mortgagors holding an interest in the above described property were (1) not members of the Armed Forces of the United States of America and had not been members of any such entities for at least nine (9) months prior to the date of the foreclosure sale the subject hereof or (2) were members of the Armed Forces of the United States of America at the time the security instrument was executed.

2. As such, the foreclosure of this property will not be subject to the provisions of 50 U.S.C.S. §501, et seq. (the Servicemembers Civil Relief Act).

FURTHER AFFIANT SAYETH NOT.

DATED this 13th day of January, 2020.

Jerry Bridenbaugh
Attorney at Law, Bar Number 033829
Mackie Wolf Zientz & Mann, P.C.

### ACKNOWLEDGMENT

STATE OF TENNESSEE          §
COUNTY OF WILLIAMSON     §

On this 13th day of January, 2020, before me, Staci Ray, the undersigned officer, personally appeared Jerry Bridenbaugh of Mackie Wolf Zientz & Mann, P.C., known to me (or satisfactorily proven) to be the person whose name is subscribed as attorney-in-fact for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS, and acknowledged that he/she executed the same as the act of his/her principal for the consideration, uses, and purposes therein contained.

IN TESTIMONY WHERE OF, I hereunto set my hand and official seal.

STACI RAY
STATE OF TENNESSEE
NOTARY PUBLIC
DAVIDSON COUNTY
MY COMMISSION EXPIRES MARCH 08, 2022

Certificate of Authenticity

I, <u>Jerry A. Bridenbaugh</u>, do hereby make oath that I am a licensed attorney and/or the custodian of the electronic version of the attached document tendered for registration herewith and that this is a true and correct copy of the original document executed and authenticated according to law.

State of Tennessee
County of Williamson

Personally appeared before me, <u>Staci Ray</u>, a notary public for this county and state, <u>Jerry A. Bridenbaugh</u>, who acknowledges that this certification of an electronic document is true and correct, and whose signature I have witnessed.

Notary's Signature

January 14, 2020
Date

MY COMMISSION EXPIRES:  <u>March 8, 2022</u>
Notary's Seal (If on paper)

# F I A T

## TO THE CLERK OF COURT:

Please issue the injunctive relief as requested in the petition as follows:

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR FFMLT

2007-FFB-SS, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-FFB-SS,

MACKIE WOLF ZIENTZ & MANN, P.C., as SUBSTITUTE TRUSTEE, and SPECIALIZED

LOAN SERVICING LLC as Attorney in Fact FOR DEUTSCHE BANK NATIONAL TRUST

COMPANY, AS TRUSTEE FOR FFMLT 2007-FFB-SS, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2007-FFB-SS and their employees, agents, and/or servants from

auctioning, selling, foreclosing or otherwise disposing of any interest that any of these

defendants may have or claim to have in the real property located at 5094 WINBERRY COVE,

ARLINGTON, TENNESSEE 38002, pending further order of this Court.  Bond is set in the

amount of _500°°_.

Please set the matter of a temporary injunction for hearing on the _14_ day of _February_,

2020 at _1_ o'clock a.m./p.m. before ~~Division~~ Part 3 of the Shelby County Chancery Court, 140

Adams Ave., Memphis, Tennessee 38103.

_[signature]_
CHANCELLOR

_01-30-2020_
Date

A TRUE COPY-ATTEST
W. Aaron Hall, Clerk & Master
By _[signature]_
D.C. & M.

FEB 2 1 2020